**INTERNATIONAL MERCHANDISING CORPORATION, Appellant,**

**v.**

**MEARNS et al., Appellees.**

[Cite as *Internatl. Merchandising Corp. v. Mearns* (1989), 63 Ohio App.3d 32.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55247.

Decided May 22, 1989.

*Arter & Hadden, M. Neal Rains* and *Irene C. Keyse–Walker,* for appellant.

*Jacqueline Simpson,* for International Management Group.

*Jones, Day Reavis & Pogue, Charles H. Muellenberg* and *Robert S. Walker,* for appellees.

---

KRUPANSKY, Judge.

In 1985 plaintiff International Merchandising Corporation ("IMC") filed a complaint in Cuyahoga County Common Pleas Court, case number 100523, against four of its former employees, including Edward A. Mearns III. Plaintiff's complaint alleged, *inter alia,* defendants violated their employment contracts with IMC by breaching restrictive covenants not to compete against plaintiff.

On January 13, 1986 the trial court journalized an agreed entry which enjoined defendants from having business dealings with individuals, events and corporations named in the order for a two-year period commencing November 1, 1985 and ending November 1, 1987. In the entry defendants also agreed not to perform any sports marketing or sports management services for a period of eighteen months within a radius of fifty miles from the approximate centers of London, England and Tokyo, Japan. Defendants further agreed in the entry to limit their business activities within a fifty-mile radius of the approximate centers of New York, New York, Cleveland, Ohio and Los Angeles, California.

On August 26, 1986 plaintiff filed a motion to show cause why defendant Mearns and Heritage Group, Mearns' corporation, should not be held in contempt for allegedly violating the court's January 13, 1986 order. A two-day hearing was held on plaintiff's motion to show cause. On February 4, 1988 the trial court journalized its findings of fact and conclusions of law and overruled plaintiff's motion. Plaintiff filed a timely notice of appeal assigning one error.

The relevant facts follow:

In December 1980, defendant Mearns, an attorney, was hired by the legal department of IMC. In 1981, Mearns became the director of IMC's Running and Fitness Division, and was elected divisional vice president in 1982. The business of the athletic and fitness division of IMC was to represent athletes and assist them in generating income. In return, IMC would receive compensation in the form of commissions.

In 1981, Mearns signed well-known long distance runner Bill Rodgers as a client of IMC.[1] In its agreement with Rodgers, IMC would receive commissions for any endorsements or income IMC generated for Rodgers. Bill Rodgers was a significant client of IMC, paying plaintiff a substantial amount of commissions. However, several of Rodgers' business activities were not covered by his agreement with IMC. For instance, Marathon Running Company ("MRC") was excluded from the Rodgers and IMC contract.[2] MRC is a corporation founded by Rodgers in 1977 which manufactured and sold exercise clothing which bore Bill Rodgers' logo.[3]

In 1982, defendant Mearns, while vice president of IMC, arranged for Bill Rodgers to endorse a joint promotion by American Express and Holiday Inn entitled "Focus on Fitness." In this program persons would earn "points" every time they charged their stay at Holiday Inn on their American Express card. These points could be redeemed for exercise merchandise, including running apparel which bore Bill Rodgers' logo.

MRC by contract was to supply the "Focus on Fitness" program with Bill Rodgers' licensed clothing. Rodgers was to receive a ten percent commission on the gross sales of MRC from the "Focus on Fitness" program. Defendant Mearns informed Rodgers that since Mearns brought MRC to Rogers for the fitness promotion, the deal was not covered by Rodgers' contract with IMC

---

1. Bill Rodgers won the New York City Marathon in 1976.

2. MRC is also known as "Bill Rodgers and Company."

3. Rodgers had a licensing agreement with MRC and at the time of this action Rodgers was a minority shareholder of the corporation.

and, therefore, it was outside the scope of defendant's relationship with IMC. Accordingly, Mearns received fifty percent of Rodgers' commission from MRC, which represented five percent of MRC's gross sales from the "Focus on Fitness" promotion. IMC did not receive any compensation from Bill Rodgers' involvement in the fitness promotion.

The "Focus on Fitness" program ended in the summer of 1984 and the amounts due Rodgers and Mearns were ascertained. MRC made payments to Rodgers' attorney, Alan S. Geismer, who split the amount in half and sent Rodgers and Mearns checks. On September 14, 1984 and November 26, 1984 Mearns received checks from Geismer. However, Mearns did not receive the outstanding balance and wrote Geismer several letters requesting payment prior to November 1, 1985.

On January 13, 1986 the trial court journalized a stipulated journal entry which limited defendants' business contacts geographically and by naming persons and corporations for a two-year period commencing November 1, 1985 and ending November 1, 1987. Thereafter, on January 15, 1986, plaintiff voluntarily dismissed without prejudice its claims against the defendants including defendant Mearns.

In a letter to Geismer dated February 21, 1986 Mearns requested the "final resolution of the MRC/Holiday Inn deal" and asked Geismer to respond to Mearns' previous letter which also requested payment in full. In response, Geismer sent Mearns a check dated February 24, 1986 in the amount of $13,128.46.[4] This amount represented the outstanding balance MRC owed defendant for his commissions.

Plaintiff filed a motion to show cause on the ground Mearns and The Heritage Group, Mearns' corporation, violated the trial court's January 13, 1986 order by having "business dealings or business contacts" with Bill Rodgers, *viz.*, a letter sent to Rodgers' attorney February 21, 1986 and a $13,128.46 check dated February 24, 1986 and received by Mearns from Geismer. In its order denying plaintiff's motion to show cause, the trial court found in part as follows:

"1. * * * [P]rior to November of 1985 Mr. Mearns, while in the employee [*sic*] of the Plaintiff, had what could be termed at an absolute minimum, inappropriate business contacts and dealings with a number of different individuals and companies;

" * * *

---

**4.** The initial check came from MRC. This check was deposited to Bill Rodgers, Inc.'s account. The check sent to Mearns by Geismer was drawn upon Bill Rodgers, Inc. company's account.

"9. [Mearns'] acts were an attempt to collect the remaining balance of a past-due debt outstanding at the time of the Agreement [the January 13, 1986 entry] and that this Court is not convinced that these acts were contemplated by the parties and, therefore, prohibited." February 4, 1988 entry, page 3.

Plaintiff's sole assignment of error follows:

"The trial court erred as a matter of law by failing to: (1) apply and enforce the plain, unambiguous language of an agreed injunction; (2) find that defendants had violated the agreed injunction; and (3) enter a finding that defendants were in contempt of the agreed injunction."

Plaintiff's assignment of error lacks merit.

Plaintiff argues the trial court erred when it overruled plaintiff's motion to show cause since Mearns' conduct, in light of the language of the agreed order, clearly required a finding that Mearns was in contempt. In essence, plaintiff's argument would construe any contact between Mearns and Rodgers, even if uninitiated by Mearns, as a violation of the trial court's January 13, 1986 order. This argument calls for an extremely parochial construction of the court's prior order and is untenable.

A trial court's decision in a contempt proceeding will not be reversed in the absence of a showing of an abuse of discretion. *State, ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11, 19 O.O.3d 191, 417 N.E.2d 1249; *State, ex rel. Adkins, v. Sobb* (1988), 39 Ohio St.3d 34, 35, 528 N.E.2d 1247, 1248.

"Abuse of discretion has been defined as more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. (Citations omitted.)" *Marks v. C.P. Chemical Co.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 398–399, 509 N.E.2d 1249, 1252.

In the case *sub judice*, the trial court did not abuse its discretion when it found Mearns did not violate the court's January 13, 1986 order by sending the letter dated February 21, 1986 and receiving the commission check dated February 24, 1986 in the amount of $13,128.46. The stipulated order of January 13, 1986 provides in relevant part as follows:

"(1) Plaintiff has submitted to defendants a list of individuals, events, proposed events, and other entities with whom defendants dealt while the defendants were employed by plaintiff. The list is Exhibit A to this order. *Defendants agree that for a period of two years from November 1, 1985, defendants will have no business dealings or business contacts of any kind with the individuals, events, proposed events and other entities set forth on the list*, except as expressly permitted by such list, nor will the defendants, directly or indirectly, represent or solicit representation of the individuals,

events, proposed events and entities set forth on the list on behalf of the defendants or any other individual or group. * * * " (Emphasis added.)

Bill Rodgers individually and Bill Rodgers, Inc. were named on the list attached to the order. However, neither MRC nor attorney Alan Geismer was named in the list. Thus, pursuant to the facts *sub judice*, Mearns could have contacted either Geismer or MRC without violating the order. There is no evidence in the record Mearns contacted Bill Rodgers individually or Bill Rodgers, Inc. or attempted to solicit business dealings from either party. Since Mearns did not contact Bill Rodgers individually or Bill Rodgers, Inc., the terms and conditions of the order were inapplicable to the conduct of Mearns and the trial court did not abuse its discretion when it overruled plaintiff's motion to show cause.

In addition, plaintiff had the burden of proving defendant Mearns violated the court's January 13, 1986 order by clear and convincing evidence. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 18 O.O.3d 446, 448, 416 N.E.2d 610, 612. A trial court is entitled to a presumption that its findings of fact are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276.

In its February 4, 1988 entry the trial court stated in relevant part as follows:

"8. [T]hat the plaintiff failed to demonstrate by clear and convincing evidence that these acts were business contacts and/or business dealings with the parties listed in Exhibit 'A' of the Agreement. * * * "

Thus, even if MRC and Geismer were included on the list of prohibited business contacts, the trial court did not deem defendant's contact with attorney Geismer to be a "business contact" in violation of the January 13, 1986 order. Since the record does not reveal evidence to the contrary, the trial court's findings are entitled to be presumed correct. *Seasons Coal Co. supra.* Therefore, the trial court did not abuse its discretion when it denied plaintiff's motion to show cause.

Accordingly, plaintiff's sole assignment of error is not well taken and is overruled.

*Judgment affirmed.*

ANN MCMANAMON, C.J., and PARRINO, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.